UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD WILLIAM JENNINGS,

       Plaintiff,

  v.            **DECISION AND ORDER**
                13-CV-834

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

    1.  In this action, Plaintiff Richard Jennings challenges an Administrative Law

Judge's ("ALJ") determination that he was not disabled within the meaning of the Social

Security Act ("the Act") during the period November 18, 2009 to June 1, 2011.

    2.  On February 17, 2010, Jennings filed an application for Disability

Insurance Benefits ("DIB") under Title II of the Act, claiming an inability to work due to

disability beginning November 18, 2009. (R. 77, 157-58.)[1] His application was denied on

April 20, 2010. (R. 80-87.) Jennings then requested a hearing, which was held before

ALJ Timothy McGuan on November 15, 2011. (R. 48-76.) Jennings was represented by

counsel at the hearing, at which he appeared in person and testified. (Id.)

    3.  The ALJ considered his Title II application *de novo* and, on March 21,

2012, issued a written decision finding that, prior to June 1, 2011, Jennings was capable

of performing his past relevant work as a quality control technician, but he became

disabled on June 1, 2011 and remained disabled through the date of the ALJ's decision.

(R. 22-30.) Jennings requested review by the Appeals Council, which denied the

---

[1] Citations to the administrative record are designated as "R."

request on June 15, 2013. (R. 1-6.) He commenced this civil action on August 15, 2013,

challenging the Commissioner's final decision.[2]

4.      On January 27, 2014, Jennings and the Commissioner each filed a motion

for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.

(Docket Nos. 9 and 10.) The motions were fully briefed on March 17, 2014, at which

time this Court took the matter under advisement.  For the reasons set forth below, the

Commissioner's motion is granted and Jennings's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y

of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will be reversed only if it is not supported by substantial

evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.

1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that

which amounts to "more than a mere scintilla"; it has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

Jennings v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60,

62 (2d Cir. 1982).

6.      "To determine on appeal whether the ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's March 21, 2012 decision became the Commissioner's final decision in this case when the
Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8.     The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted

with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.      Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.      In this case, the ALJ made the following findings with regard to the five-step process: (1) Jennings had not engaged in substantial gainful activity since November 18, 2009 (R. 24); (2) his C5-6 disc herniation, left shoulder impingement, supraspinatus tendinopathy, AC joint osteoarthropathy with mild encroachment on the supraspinatus outlet, and degenerative changes within the humeral head and cervical radiculopathy were severe impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 14-24); (4) prior to June 1, 2011, Jennings had the residual functional capacity ("RFC") to perform light work except for a sit and stand

option after two hours and no overhead use of arms for work (R. 25); (5) beginning on June 1, 2011, Jennings had the RFC to perform sedentary work except he can sit for up to 2 hours, stand and or walk for up to 2 hours and 4 hours total in an 8-hour workday, needs the option to sit and stand at will, and can occasionally lift up to 5 pounds, with no postural activities or reaching (R. 28); (6) prior to June 1, 2011, Jennings was able to perform past relevant work, but was unable to do so on and after June 1, 2011; and (7) since June 1, 2011, no jobs existed in significant number in the national economy that an individual of his age, education, past relevant experience, and RFC could perform (R. 30).

11.     Jennings contends the ALJ erred in concluding that he was not disabled from November 18, 2009 to June 1, 2011. In particular, Jennings maintains that: (a) medical opinions from his treating physicians which conflict with the RFC finding were not accorded proper weight; (b) the ALJ erred when he made no effort to recontact treating physicians to clarify his disability onset date; and (c) the ALJ failed to properly assess his credibility and strong work history.

12.     The Social Security Act recognizes a "treating physician" rule, entitling deference to the opinions of treating sources, including but not limited to medical doctors and psychologists. 20 C.F.R. § 404.1502. The regulations state that a treating source's opinion regarding the nature and severity of an impairment will be given "controlling weight" if the opinion is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the case record.

<u>Younger v. Barnhart</u>, 335 F.3d 99, 106 (2d Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2)[3]).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). An ALJ may not substitute his own judgment for competent medical opinion. <u>McBrayer v. Sec. Health and Human Svcs.</u>, 712 F.2d 795, 799 (2d Cir. 1983). However, the ALJ need not adopt a statement by a medical source that a claimant is "disabled" or "unable to work" as the responsibility to make that determination is reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1).

13.     Here, Jennings objects to the ALJ's determination that, prior to June 1, 2011, he could perform light work, with limitations.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be

---

[3] Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. 77 FR 10651, 10656. This opinion refers to regulations in effect when the ALJ adjudicated this claim.

considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Jennings contends the RFC determination does not adequately reflect the various medical opinions regarding his functional capacity, and the ALJ erred when he failed to discuss and weigh those opinions as required by the regulations.

14.    Among other evidence, the administrative record includes treatment records from Jennings' primary physician, Dr. Hohensee, dated February 14, 2008 to April 11, 2011, and from Dr. Singh, a pain management specialist, dated June 9, 2011 to September 27, 2011. In addition, there is an orthopedic evaluation by Dr. Huckell dated October 30, 2009. The ALJ's decision summarizes the physicians' respective notes and findings as to Jennings' range of motion prior to June 1, 2011, and the various lifting and postural limitations placed on him during that time. In addition, he was noted that Dr. Hohensee assessed Jennings with regard to a worker's compensation claim that originated in 2006 and consistently, including at a hearing in March 2010, opined that Jennings had only a moderate, partial disability. (R. 26, 171-72.) At the worker's compensation hearing, there was no dispute that Jennings was not totally disabled. (R. 171-72.) Moreover, the ALJ's RFC determination for the period prior to June 1, 2011 is consistent with the most restrictive limitations imposed by any treating source during that time. In short, there is no basis on this record to conclude the ALJ failed to credit the medical opinions and give them controlling weight.

On April 11, 2011, Jennings reported to Dr. Hohensee that his pain was now severe and he had taken all of his pain medication in a two week period. Dr. Hohensee referred him to Dr. Singh, a pain specialist. Jennings saw Dr. Singh on three occasions

from June 9 to September 27, 2011. At each visit, Jennings reported he felt stable on his current medications, and Dr. Singh made no changes to his prescribed treatment. (R. 355-58, 362-63.)

On July 15, 2011, Dr. Honensee completed a residual functional capacity questionnaire in which he opined that Jennings could now sit and stand/walk for less than 2 hours each in an 8-hour day, with no lifting of any weight and virtually no postural activities, and that his symptoms would cause him to miss more than four days of work per month. (R. 339-43.) These limitations were fully adopted in the ALJ's RFC determination beginning June 1, 2011, just prior to Jenning's first visit to Dr. Singh for pain management. The ALJ's conclusion that the record, including the treating physicians' assessments, did not support a more restrictive RFC prior to that date is supported by substantial evidence. Accordingly, Jenning's request for remand on this basis is denied.

15.    Jennings next contends the ALJ had a duty to recontact Dr. Hohensee because his July 15, 2011 assessment did not state a date on which each limitation he identified actually began.

The regulations in effect when the ALJ issued his decision state:

When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision . . . [and] will first recontact your treating . . . medical source to determine whether the additional information we need is readily available.

20 C.F.R. §§ 404.1512(e) (2011)[4]. It is well established in this Circuit that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted); Brogan-Dawley v. Astrue, 484 Fed. Appx. 632, 634 (2d Cir. 2012) (ALJ is only required to recontact physician if he or she cannot determine from the records received whether claimant is disabled).

The Court finds no obvious gaps in the record here. Having reviewed the records from Dr. Hohensee and other treating and examining sources, the Court finds they contain sufficient diagnostic, examination, and opinion evidence from which the ALJ could determine, at various points in time, whether Jennings was disabled.

16.    Jennings further argues that Dr. Hohensee should have been recontacted because the ALJ described his handwritten notes as "almost impossible to read." (R. 26.) To this, the Court simply notes that "almost impossible" does not mean "impossible," and the ALJ's extensive summary of Dr. Hohensee's notes indicates he was able to make them out, however laborious the task may have been. The Court finds no error with regard to the ALJ's development of the record, which was left open at the ALJ's initiative to allow for the submission of complete records from Dr. Singh.

17.    Finally, Jennings maintains the ALJ did not give clear reasons for finding that his allegations of disability prior to June 1, 2011 were not entirely credible and that the ALJ failed to take his good work history into account.

---

[4] Effective March 26, 2012, the Commissioner amended § 404.1512, removing paragraph (e) from the regulations. 77 FR 10651, 10655.

A federal court must afford great deference to the ALJ's credibility finding so long as it is supported by substantial evidence. Bischof v. Apfel, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999); see also, Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the ALJ's determination [as to claimant's credibility] because he heard [claimant's] testimony and observed [his] demeanor.").

18.   In his decision, the ALJ identified three instances where Jennings' testimony was inconsistent with the record, and further found that Jennings appeared to be exaggerating his claims during his hearing testimony. The ALJ contrasted Jennings' complaints of disabling symptoms with his report that he had hurt his neck in March 2010 while shoveling, an activity one would not expect a person with his claimed limitations to perform. In rejecting Jennings' testimony as to the severity of his impairments prior to June 1, 2011, the ALJ also reasonably relied on contrary evidence in the record, including notes and reports from treating and examining physicians which consistently indicated that Jennings could perform work at a light duty level up to 8 hours a day, with no overhead use of his arms.

As Jennings correctly notes, the ALJ did not specifically credit his good work history in the decision. It is beyond dispute that "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see also, Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (noting that evidence of good work record is evidence of credibility). Work history, however, is "just one of many factors" appropriately considered in the credibility assessment. Schaal, 134 F.3d at 502.

In this case, the ALJ was well aware of Jennings' employment and did not ignore his work history. Among other things, he noted that Jennings alleged a disability onset date that coincided with the closure of the plant at which he was employed. The ALJ also noted that, prior to the plant closure, Jennings' employer had assigned him to jobs he could not do which caused Dr. Hohensee to impose restrictions on lifting and overhead work. In making the RFC determination that, prior to June 1, 2011, Jennings was capable of performing the quality control technician job to which he had most recently been assigned, the ALJ specifically stated the position did not require the performance of work-related activities precluded by his limitations. Given the substantial evidence supporting the ALJ's credibility assessment, his failure to specifically credit Jennings' good work history does not undermine the determination. On this record, the Court is unable to identify any error that would require remand.

* * * * *

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  July 24, 2014
         Buffalo, New York                          /s/William M. Skretny
                                        _____
                                               WILLIAM M. SKRETNY
                                                    Chief Judge
                                         United States District Court